```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


KENNETH R. DILLARD,                :
                                   :
      Plaintiff,                   :
                                   :
vs.                                :
                                   :     CIVIL ACTION 15-311-M
CAROLYN W. COLVIN,                 :
Social Security Commissioner,      :
                                   :
      Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (SSI) (Docs. 1, 14).  This action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 15).  Oral argument was waived in this action (Doc. 20).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-nine years old, had attended the tenth grade and had previous work experience as a floor installer, sheet metal production worker, and woodworking machine operator. (Doc. 14 Fact Sheet). Plaintiff alleges disability due to Degenerative Disc Disease (DDD), Osteoarthritis (OA), Chronic Obstructive Pulmonary Disease (COPD), and Neuropathy. (Id).

The Plaintiff protectively applied for disability benefits and SSI on April 15, 2008, asserting a disability onset date of June 16, 1995. (Tr. 69-72). On June 29, 2010, Plaintiff additionally applied for SSI, asserting a disability onset date of June 29, 2010 (Tr. 234-37; Doc. 14 at 1; Fact Sheet).[1] An Administrative Law Judge (ALJ) denied benefits after determining

---

[1] On March 26, 2012, the Appeals Council consolidated Plaintiff's June 29, 2010, claims with his earlier claims.

that Dillard did not meet disability listing requirements[2]; the ALJ further found that Plaintiff was capable of performing less than the full range of light work. (Tr. 336). Plaintiff requested review of the hearing decision but the Appeals Council denied it. (Tr. 305-308).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Dillard alleges that: (1) The ALJ committed reversible error by substituting her own medical opinion for the opinion of a medical professional; and (2) the ALJ failed to assign controlling weight to the opinion of Plaintiff's treating physician, Dr. Felix Dulanto. (Doc. 14). Defendant has responded to—and denies—these claims (Doc. 15). The relevant evidence of record follows.

On May 14, 2008, Dillard was examined by Dr. Ahmas Haidar for problems with his right leg since he was a teenager. (Tr. 162-63). This was Plaintiff's first examination for that complaint. (Id). Dillard additionally complained of pain in his back, right hip, right knee, and right ankle. (Id). Upon exam, Dillard was noted to have a normal range of motion (ROM) in his hips, knees, and ankles and a normal dorsi- and plantar

---

[2] This is actually the second ALJ opinion, after the District Court remanded this action for further consideration of Plaintiff's orthopedic impairments, subjective complaints, maximum residual functional capacity, and any supplemental evidence from a vocational expert. (Tr. 331).

3

flexion. (Id). He could not walk on his tiptoes and heels, but he could squat and bend forward with his fingertips fourteen inches from the floor. (Id). No assistive devices were used or required for ambulation. Dillard was assessed as having chronic right leg pain, with no specific findings. (Id). X-rays of Dillard's Lumbar spine, taken the same day, indicated Grade I spondylolithesis of L5 on S1 with bilateral spondylosis of L5; spondylotic changes in the upper lumbar spine and lower thoracic spine with moderate degenerative disc disease at the L1-2 and L2-3 levels; and mild scoliosis. (Tr. 164). X-rays of Dillard's hip showed mild degenerative changes with no acute bony abnormality. (Tr. 165).

An impression of Dillard's lumbar spine x-rays taken on October 20, 2008, indicated discogenic spondylosis throughout the imaged mid to lower thoracic spine and from T12 to L3-2; facet arthrosis, lower lumbar spine; postural comments and biomechanical alterations; but no other gross evidence of bone or joint pathology. (Tr. 555).

On June 10, and July 16, 2009, Dillard went to the Manna Ministry Medical Clinic for follow up of his chronic pain to the right side of the body and was given prescription medication refills. (Tr. 193-94). X-rays of Dillard's lumbar and thoracic spine, taken on October 6, 2009, showed mild degenerative changes to the thoracic spine and degenerative changes with DDD

4

to the lumbar spine. (Tr. 221).

On December 7, 2009, Dillard presented to the Mobile County Health Department for x-rays of his knees which showed mild narrowing of the medial lateral joint compartments on the frontal views but which were otherwise unremarkable.  (Tr. 190).

Dillard sought monthly follow up care from Dr. Roberts from October 6, 2009 to May 13, 2010, for prescription medication refills for knee, hip, shoulder, and back pain, instability, and arthralgias.   (Tr. 196-208).

On July 28, 2010, Dillard visited the Stanton Road Clinic (Stanton) for a second opinion regarding pain in his neck, back, knees, and feet.  He was given new medication for depression and continued his previous medication of Lortab[3] and Lyrica[4].

On August 25, 2010, Dillard went to the Franklin Primary Health Center (Franklin) for complaints of back, neck, leg, and ankle pain and requested higher dosages of prescription pain medication.  (Tr. 254-55).  Plaintiff was noted to walk with a cane.  (Id).  He was diagnosed with DDD, osteoarthritis, radiculopathy, depression, tobacco abuse, and early COPD.  He

---

[3] *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[4] *Lyrica* is used for the management of neuropathic pain. *Physician's Desk Reference* 2517 (62nd ed. 2008).

5

was given prescription Lortab, Lyrica, and Elavil[5]. (Id). X-rays showed early osteoarthritic changes in the lateral compartments of both knees. (Tr. 594). X-rays of his cervical spine showed multilevel degenerative spondylosis. (Id). X-rays showed osteoarthritic changes in both hips, right greater than left. (Id).

On September 3, 2010, Dr. Cunningham with the Mobile County Health Department completed a physical residual functional capacity assessment based on Dillard's medical records and opined that Dillard could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand or walk at least two hours in an eight hour day, sit six hours in an eight hour day, and could push/pull for an unlimited amount of time. (Tr. 595). It was determined that Dillard could frequently climb ramps/stairs, balance, stoop, and crawl, and occasionally climb ladders/rope/scaffolds, crouch, and kneel. (Tr. 595-602).

On September 30, 2010, Dillard returned to Franklin for a follow up. (Tr. 603-04). It was noted that he used a cane and his pain was seven to eight on scale of ten. (Id). Dillard was diagnosed with DDD (c-spine), depression, early OA, and smoked. (Id). He was given a refill of Lortab and Lyrica and a prescription for Paxil[6] with a plan to decrease his narcotics.

---

[5] *Elavil*, is used to treat the symptoms of depression. *Physician's Desk Reference* 3163 (52nd ed. 1998).
[6] *Paxil* is used to treat depression. *Physician's Desk Reference* 2851-56

6

(Id).

On October 21, 2010, Dillard returned to Stanton with complaints of a burning sensation in the bottom of his feet, with occasional numbness, tingling, and getting cold. (Tr. 610-11). Dillard also complained of tingling in his arms. It was noted that he had difficulty walking secondary to right leg pain. (Id). Dillard was diagnosed with peripheral polyneuropathy of unknown etiology and neuropathy studies were ordered. (Id).

Dillard returned to Stanton on December 8, 2010, for follow-up stating his pain was seven out of ten and on exam it was noted that Dillard was able to walk and get on the exam table with minor assistance. (Tr. 608-09). Dillard's pain medications were continued. (Id).

On January 7, 2011, Dillard returned to Franklin for complaints of severe pain. He was found to have decreased ROM in the spine and was diagnosed with DDD, OA, chronic pain, smoking, and COPD. Dillard was continued on Lyrica, Lortab, Elavil, and Paxil. (Tr. 631-32).

On March 20, 2011, Dillard visited Stanton for complaints of right ankle pain and swelling. (Tr. 605). It was noted that Dillard had a long history of chronic back pain and antalgic

---

(52nd ed. 1998).

7

gait and that he used a cane to get around. (Id). X-rays were taken which showed no significant arthritis of his right ankle. (Id). Dillard was diagnosed with a right ankle sprain and given a prescription for Mobic. (Id).

On May 23, 2011, Dr. Dulanto completed a clinical assessment of pain form provided to him by Dillard's attorney wherein Dr. Dulanto indicated that he had treated Dillard since August 25, 2010, for DDD and OA. (Tr. 625-26). Dr. Dulanto indicated that Dillard's pain was intractable and virtually incapacitating and that physical activity caused an increase of pain to such an extent that bed rest would be necessary. (Id). Dr. Dulanto further indicated that Dillard would be totally restricted and unable to function at a productive level of work. (Id). The same day, Dillard was seen at Franklin for follow up care. (Tr. 627). No physical exam was performed secondary to Dillard being wheelchair bound and Dillard stated that he could not walk more than five minutes at a time and "can't pick up any weight." (Id.) Dillard's previous diagnoses were reaffirmed and he was given a refill for Lortab and Paxil. (Tr. 627-28).

On July 21, 2011, Dillard was seen at Franklin for complaints of lower back pain, headaches, restlessness, shoulder pain, and leg pain and for refills of his prescription medication. Dillard's prescription medications were continued. (Tr. 431-32).

On August 13, 2011, Dillard returned to Stanton Road for follow up of his lower back pain. (Tr. 612-13). Dillard rated his pain as a three out of ten. On exam, Dillard had "full range of motion in all extremities, decreased sensation in feet, no step out on spine and tenderness in C4-6, T10-12, L1-L5." (Id). His pain medications were continued. (Id).

From September 27, 2011, to April 30, 2012, Dillard visited Franklin four times for refills of pain medications including, Lortab, Neurontin[7], and Cymbalta and for follow up of his DDD, OA, depression, Neuropathy, and COPD (Tr. 423-30). In February, 2012, it was noted that Dillard was wheelchair bound and could not walk. (Tr. 425-26) In April, 2012, Dillard was additionally diagnosed with a right ankle sprain. (Tr. 423-24).

On May 29, 2012, Dillard was evaluated by Dr. William Crotwell, an orthopedic surgeon. (Tr. 411). It was noted that, subjectively, Dillard complained of constant pain across his back and of bilateral knee pain and indicated he has to use crutches and a wheelchair at times. (Tr. 411-413). Dillard rated his pain as an eleven on a pain scale of ten. (Id). On exam, Dr. Crotwell noted Dillard acted in a bizarre manner and was difficult to examine. (Id). It was noted that he got up out of his wheelchair and made

---

[7] *Neurontin* is used in the treatment of partial seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

9

poor attempts on exam. Dr. Crotwell noted Dillard's right knee x-rays indicated mild joint space collapse with mild arthritis, but his left knee x-ray was normal. (Id). An x-ray of Dillard's lumbar spine, AP, and lateral, showed hips were normal and Dillard was noted to have some mild rotatory scoliosis of about ten degrees and spondylolitheis, grade I with some mild arthritis. (Id). Dr. Crotwell's impression was that Dillard had lumbar DDD, mild arthritis of the right knee and a history of lumbar pain with weakness and instability with no objective findings whatsoever. (Id).

From August 13, 2012, to June 11, 2013, Dillard returned to Franklin for follow up care and refills for chronic pain from DDD and osteoarthritis and depression, including, Cymbalta[8], Flexeril[9], Lortab, and Neurontin. (Tr. 325-26, 415-417, 418-20, 421-22). In November, it was noted that Dillard was typically wheelchair bound but presented walking with crutches. (Tr. 418-420). In December, it was discovered that Dillard's urine screen from August, 2012, was positive and Plaintiff explained that he had taken one of his mother's pills when he ran out

---

[8] Cymbalta is used in the treatment of major depressive disorder. *Physician's Desk Reference* 1791-93 (62nd ed. 2008).
[9] Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

of Lortab.  (Tr. 415-417).  In June, Plaintiff was assessed as having multiple DDD with pain and unable to walk without assistance.  This concludes the Court's summary of the evidence.

In bringing this action, Dillard claims that the ALJ arbitrarily substituted her own medical opinion for that of a medical professional without the support of substantial evidence in fashioning her residual functional capacity (hereinafter *RFC*) (Doc. 14, pp. 2-9). Plaintiff additionally takes issue with the weight that the ALJ gave to the opinion of Dr. Dulanto, Dillard's treating physician.  (Id. at 10-11).

In her determination, the ALJ found that Dillard had the "residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." (Tr. 347).  More specifically, the ALJ concluded that the claimant:

> [C]an stand and walk no more than thirty minutes at one time and no more than three to four hours in an eight hour day.  He can occasionally operate foot controls, climb stairs, and ramps, and balance, stoop, and crouch.  He cannot climb ladders, ropes or scaffolds.  He cannot kneel or crawl. He cannot work around unprotected height, dangerous equipment, temperature extremes, humidity and wetness, or concentrated environmental pollutants.

(Tr. 336).  After summarizing the medical evidence, the ALJ stated that she gave little weight to the conclusions of Dr. Dulanto and some weight to the opinions of Dr. Cunningham and

Dr. Crotwell. (Tr. 344-45).

This Court will first address whether the ALJ erred in assigning Dr. Dulanto's opinion little weight. The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[10] *see also* 20 C.F.R. § 404.1527.  In the ALJ's opinion, the weight given to Dr. Dulanto's opinion was diminished "because it is inconsistent with his own records and is not supported by the evidence." (Tr. 344).  More specifically, the ALJ pointed out that the x-rays on which Dr. Dulanto reportedly relied in reaching his opinion were not objectively supportive of Dr. Dulanto's conclusion relating to the severity of Plaintiff's pain.  This Court additionally recognizes the inconsistencies between Plaintiff's medical records and Dr. Dulanto's opinion. For example, on December 8, 2010, five months prior to Dr. Dulanto's assessment, Stanton medical records note that Plaintiff was able to "walk and get on exam table with minor assistance." (Tr. 609).  Then, in August, 2011, following Dr. Dulanto's assessment, Stanton records indicate Plaintiff's pain

---

[10] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

12

was three out of ten and that, on exam, Plaintiff had full ROM in all extremities. (Tr. 612-13). Moreover, the ALJ explained that Dr. Dulanto's opinions were inconsistent with the treatment rendered to Plaintiff by Dr. Dulanto, himself, i.e., pain medication management without hospitalization or referral to a specialist.[11]

As a result, this Court finds that there was objective evidence that contradicted Dr. Dulanto's opinion such that the ALJ did not err by giving him only little weight. Plaintiff's assertion is without merit.

Next, Plaintiff has asserted that the substantial evidence does not support the ALJ's RFC finding. The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2015). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 404.1545(a)(3) (2015).

In addition to the medical records reviewed by the ALJ in determining the Dillard's RFC, there were several consultative opinions which were reviewed. Specifically, in May, 2008,

---

[11] It is noted that Plaintiff was eventually referred to a specialist in November, 2011, but that was six months after Dr. Dulanto's opinions were reached.

13

Plaintiff was examined by Dr. Ahmad Haidar who concluded that Dillard had a normal ROM in the lower extremities, normal dorsi- and plantar flexion, and could squat and bend forward.  It was noted that Plaintiff walked with a limp, but no assistive devices were used for ambulation.  (Tr. 162-63).  On June 18, 2008, Dr. Jeffcoat opined that Plaintiff was capable of the medium range of work based on a medical records review.  (Tr. 166-173).  On September 10, 2010, Dr. Cunningham, based on a review of Plaintiff's medical records, opined that Plaintiff could perform work.  (Tr. 595).  In May, 2011, Dr. Dulanto opined that Plaintiff's pain was intractable and virtually incapacitating and that physical activity would increase Plaintiff's pain to such an extent that bed rest would be necessary.  (Tr. 625-26).  Furthermore, Dr. Dulanto opined that Plaintiff's pain would render Plaintiff unable to function at a productive level of work. (Id.)  Finally, in May, 2012, Plaintiff was examined by Dr. Crotwell who completed a Physical Capacities Evaluation.  Dr. Crotwell opined that Plaintiff could sit for one hour at one time and a total of eight hours, stand for one hour at a time for a total of six hours, and walk for one hour at a time and a total of four hours.  Plaintiff could lift up to ten pounds continuously, eleven to twenty-five pounds frequently, and twenty-six to fifty pounds occasionally and could carry up to five pounds continuously, six to twenty pounds

14

frequently, and twenty-one to twenty-five pounds occasionally. Dr. Crotwell further opined that Plaintiff could frequently reach and occasionally bend, squat, crawl, and climb. (Tr. 411-13).

In her opinion, the ALJ specifically listed the compelling and non-compelling aspects of each of the consultative exams and the opinion of Dr. Dulanto, Plaintiff's treating physician, which formed the basis of her RFC finding. For example, the ALJ noted that neither Dr. Jeffcoat nor Dr. Cunningham were able to examine Plaintiff, but that Dr. Cunningham had a wider range of medical records available to her on which to base her opinion. (Tr. 344). The ALJ reduced the weight assigned to Dr. Dulanto, finding his opinion to be inconsistent with the objective medical findings and his own treatment of Plaintiff. Lastly, the ALJ, recognized Dr. Crotwell's ability to examine Plaintiff, but also indicated Dr. Crotwell's failure to consider Plaintiff's neuropathy in reaching his opinions. The Court notes that after making these assessments, the ALJ determined that Plaintiff's RFC was more restrictive than Dr. Crotwell's assessment.

With regard to Plaintiff's assertion that the RFC is not supported because he cannot walk and is wheelchair bound, the ALJ additionally explained that Plaintiff's assertions were inconsistent with his medical records and that his use of a

wheel chair was based on his own subjective complaints and not the objective medical findings. (Tr. 338, 343). The ALJ also acknowledged that the assistive devices used by Plaintiff were not prescribed by a physician, until after Plaintiff presented using them. (Id). Thus, it is evident that the ALJ both considered and explained the basis of her RFC.[12]  Furthermore, based on the totality of the medical records and for the reasons provided by the ALJ as to the weight accorded to each of the treating and consulting physicians, this Court finds that there was substantial evidence supporting the RFC reached by the ALJ.

Plaintiff has raised two claims in bringing this action; both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 24th day of February, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

---

[12] This Court additionally finds Plaintiff's assertion that the RFC is not supported by substantial evidence based on the fact the it contradicts a previous RFC finding by a different ALJ to not be compelling as the previous RFC finding was vacated.

16